UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

DUCATI NORTH AMERICA, INC., a Foreign Profit
Corporation, D/B/A DUCATI

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, DUCATI NORTH AMERICA, INC., a foreign profit corporation d/b/a DUCATI (hereinafter referred to as "DUCATI"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)      This action is also brought pursuant to 28 C.F.R. Part 36.

2)      This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)      Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)      Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a textile vest.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)    Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)    Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)    "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017).*

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, DUCATI, is a foreign profit corporation authorized to do business and doing business in the State of Florida.

20)     Defendant, DUCATI, is a company that sells sweaters, pullovers, shirts, textile vests, jackets, footwear, beachwear, and bicyclewear. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "DUCATI".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.ducati.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and

4

other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)     Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)     Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan his visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)    During the month of December 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)    Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)    Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

    **Ducati**   https://www.ducati.com

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 130.0.6723.117

Screen Reader: NVDA v. 2024.4

Video Recorder: OBS Studio 30.2.3

**Barriers**

**Modal and Navigation Focus Issues**

- **Cookies Modal Navigation:** Users can interact with page elements beneath the Cookies Modal, causing focus loss and user confusion. (1.3.2)

- **Modal Focus Trap:** The focus escapes outside active modals (e.g., Cookies Modal and Confirm Your Choice Modal), making it hard for keyboard and screen reader users to stay within the intended context. (2.4.3)

- **Main Navigation Menu:** Focus lands on invisible items within the Main Nav Menu, disrupting the logical flow for screen reader users. Additionally, the menu lacks visible focus indicators for keyboard-only navigation. (1.3.2, 2.4.7)

**Keyboard Accessibility Failures**

- **Menu and Slider Operability:** Certain menu items, such as those under the Model submenu, are not keyboard-accessible. Additionally, elements like the Ducati Model Highlights Slider and the Contact Dealer button cannot be operated with a keyboard, limiting essential access. (2.1.1)

- **Accessory Selection and Continue Button:** Keyboard users cannot fully operate the Accessories Menu or the Continue button within the customization options, blocking full site navigation and customization capabilities. (2.1.1)

**Bypass and Focus Order Concerns**

- **Bypass Mechanisms Missing:** No options to skip repeated elements, like header menus, force keyboard users to navigate through repetitive content before reaching main content areas, creating a significant navigation barrier. (2.4.1)

- **Focus Disruptions:** Focus shifts outside modals or to unrelated page elements, such as after activating the quantity decrease button in certain modals, breaking expected focus order and confusing users. (2.4.3)

**Screen Reader and Content Descriptions**

- **Insufficient Screen Reader Descriptions:** Critical product specs and slider details (like HP and Torque) are not announced, leaving visually impaired users without essential information. Additionally, accessory selections lack confirmation, making it difficult for users to know if an option was successfully selected. (1.3.1, 4.1.2)

- **Missing Image Descriptions:** Images within content like the Travel Experience Slider lack text descriptions, preventing screen readers from conveying meaningful visual information. (1.1.1)

**Form Error and Instructions Deficiencies**

- Error Identification and Field Instructions: Screen readers fail to announce invalid input or errors in key fields (e.g., missing characters in email or phone number), while required fields in forms lack labels, making it challenging for screen reader users to complete forms accurately. (3.3.1, 3.3.2)

**Violation 1: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

Users can navigate underlying page elements even when the Cookies Modal is visible and positioned on top, disrupting focus and confusing users, especially those relying on assistive technology.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ER77U7KhfAJCpoyOb7jI2DEBZjE6CsfbSY7 A1kof36qztg


**Violation 2: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus moves outside the Cookies Modal while it is open, making it challenging for keyboard and screen reader users to interact exclusively with the modal.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVojvvb5bE9NhR3hd9c66-

0B7BPRdlxn9AL6ol0cFwxkPA

**Violation 3: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading

sequence can be programmatically determined.

Focus is assigned to menu items that are not visible in the Main Navigation Menu,

creating confusion and a disjointed navigation experience for screen reader users.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdcKFR0zogdJlaZ9_9nEmeEBuiRyohDOfCq

xNWBvTJFvRA

**Violation 4: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus

indicator is visible.

The Main Navigation Menu lacks visible focus indicators on menu items, making it

difficult for keyboard-only users to track their position within the menu.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdUycR_jXvlMtd3q7aKqMNQBo5Px8Z2463
rLpxbMeyxdpA


**Violation 5: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring
specific timings for individual keystrokes, except where the underlying function requires
input that depends on the path of the user's movement and not just the endpoints.

Keyboard users are unable to reach submenu items after navigating to the model menu
item, restricting access to essential navigation options.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ee2M-
Br9FhVBuWvogqOil_MBwDVn4LWpipBUZepqmLx1wg


Violation 6: 2.4.1 Bypass Blocks

A mechanism is available to bypass blocks of content that are repeated on multiple Web
pages

There is no bypass option to skip the Main Navigation Menu and reach the main content,
forcing keyboard users to navigate through all menu elements before accessing primary
page content.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home/ducati-world-premiere

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVDn3Kwhv3xCvMWqia4BIHUBlg8IHhPC8

h7AXFBvNWJhvw

### Violation 7: 1.3.2 Meaningful Sequence

When the sequence in which content is presented affects its meaning, a correct reading

sequence can be programmatically determined.

Users can navigate the Ducati Model Highlights Slider even when it is not visible, which

disrupts the logical sequence and creates confusion about content structure.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EbHcPEwxkrdJjQP4308E8rIBJ9XsjPiZKr11

Mw2-15m2nA

### Violation 8: 2.1.1 Keyboard

All functionality of the content is operable through a keyboard interface without requiring

specific timings for individual keystrokes, except where the underlying function requires

input that depends on the path of the user's movement and not just the endpoints.

The expand item details feature in the Ducati Model Highlights Slider is not operable by keyboard, limiting access for keyboard-only users to important product information.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERCLWoXFjHRGsGeSO3zr6dsB2IqT02Dh_U-WxZ-z6oSELw

**Violation 9: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

Key specifications like HP, Torque, and Wet Weight in the Main Navigation Menu are not communicated to screen reader users, depriving them of important product information.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUuYLBZGBdhPhJFAYQn057ABLKfdpQMx4RQrdiGIejZDbQ

**Violation 10: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages

Users cannot skip the header menu to access the main content directly, creating inefficiencies for keyboard users who must manually navigate through repetitive header elements.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/bikes/desertx

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcfBMeqOkyFBuMIY9Go42FQBVv-nOF8coL2cQxaD1U0Ygw

**Violation 11: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The Contact Dealer button is inaccessible via keyboard, making it difficult for keyboard users to reach and operate this essential navigation option.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/bikes/desertx

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYZOfEL1QSxKjJ9aBAk2-

v8BCsNSBmLkfK4qXb7DgwLiFw

## Violation 12: 1.3.1 Info and Relationships

Information, structure, and relationships conveyed through presentation can be

programmatically determined or are available in text.

The Travel Experience Slider lacks descriptive information on each slide for screen

readers, preventing visually impaired users from understanding the content of each slide.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/bikes/desertx

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETNHspDYaPJFrD39LiSnvXQBjDm3eUuJya

EuUp7OldSXOw

## Violation 13: 1.1.1 Non-text Content

All non-text content that is presented to the user has a text alternative that serves the

equivalent purpose, except for the situations listed below. Controls, Input If non-text

content is a control or accepts user input, then it has a name that describes its purpose.

(Refer to Success Criterion 4.1.2 for additional requirements for controls and content that

accepts user input.) Time-Based Media If non-text content is time-based media, then text

alternatives at least provide descriptive identification of the non-text content. (Refer to

Guideline 1.2 for additional requirements for media.) Test If non-text content is a test or

exercise that would be invalid if presented in text, then text alternatives at least provide descriptive identification of the non-text content. Sensory If non-text content is primarily intended to create a specific sensory experience, then text alternatives at least provide descriptive identification of the non-text content. CAPTCHA If the purpose of non-text content is to confirm that content is being accessed by a person rather than a computer, then text alternatives that identify and describe the purpose of the non-text content are provided, and alternative forms of CAPTCHA using output modes for different types of sensory perception are provided to accommodate different disabilities. Decoration, Formatting, Invisible If non-text content is pure decoration, is used only for visual formatting, or is not presented to users, then it is implemented in a way that it can be ignored by assistive technology.

Images in the Travel Experience Slider do not have descriptions, leaving screen reader users without essential visual information.

Applicable WCAG 2.1 Standard at Issue: 1.1.1 Non-text Content (Level A)

URL Where Issue Was Encountered:

https://www.ducati.com/us/en/bikes/desertx

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVU80ogkMV5Js2lOI58J_IwBOaCxbl_8Mw6qqPowEMghwg

**Violation 14: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

Keyboard users cannot fully operate all submenu items within the Hamburger Menu, restricting their ability to navigate the site effectively.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZXKDgQlxPpJv52kOInLhTUB8K7CHHt0o ZqXBGJMvx-efQ

**Violation 15: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

Submenus in the Hamburger Menu lack descriptive information for screen readers, leaving screen reader users uncertain about submenu content.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdenfjzFwbRLnfATvpvT6kkBJoa3k5f0IaEU4 JZFnaZFbg

**Violation 16: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

Menu items in the Accessories Menu do not have visible focus indicators, making it difficult for keyboard users to track their navigation within the menu.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx/dsxrally/30807787?cid=DWAJ5V175 ZUNRT9

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYsnvSJrT4dCj4YCxYxk6OkB6gToSN3Jtm K-HHNkfIHF8A

**Violation 17: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

There is no screen reader confirmation when an accessory item is selected, leaving screen reader users uncertain about selection status.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx/dsxrally/30807787?cid=DWAJ5V175

ZUNRT9

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcjUFeH2axJAvGQVjowVdYoB7NzZqinF6R

RJoz4l_EZETw


**Violation 18: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading

sequence can be programmatically determined.

Users can navigate to underlying page elements while the Confirm Your Choice Modal is

visible and on top, disrupting logical focus and navigation.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx/dsxrally/30807787?cid=DWAJ5V175

ZUNRT9

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EagzIWRq2pRHqBT08teewn0B5rq31ptAOBp

J2YbfffS00Q


**Violation 19: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus moves to elements outside the Confirm Your Choice Modal when it is visible and on top, confusing users and making it difficult to interact solely with modal content.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx/dsxrally/30807787?cid=DWAJ5V175 ZUNRT9

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUVPSmq1jfZBrY-WWjGNTXABxC5d8d1wWdV0Hbh1Cn7UPA

**Violation 20: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not announce the color selection confirmation in the Accessory Size Confirmation Modal, leaving users uncertain about their color choice.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx/dsxrally/30807787?cid=DWAJ5V175

ZUNRT9

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcCUGYJZTo9Gq97VMZmJGiIBU-

wWLWZxCUxvyOEGzL3wvA

**Violation 21: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring

specific timings for individual keystrokes, except where the underlying function requires

input that depends on the path of the user's movement and not just the endpoints.

The Continue button in the Accessories Menu is not keyboard-operable, preventing

keyboard users from completing the bike customization process.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx/dsxrally/30807787?cid=DWAJ5V175

ZUNRT9

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdVHOCkAoudJl2r-FVnbRE8Bym8-

6uRy1Mf5ZPXxZzMZ3Q

**Violation 22: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be

programmatically determined or are available in text.

The Remove or Change buttons in the Selections List lack descriptions, causing screen reader users to miss essential information about modifying selections.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://configurator.ducati.com/bikes/us/en/desertx/dsxrally/30807787/recap?cid=DWAJ 5V175ZUNRT9

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQZhQKY8JttNovbVT8BhBjgB4BRmGVHn 69K1jKL4y0uuKg

**Violation 23: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The Contact Ducati form does not announce errors for empty or invalid values, causing users to submit incorrect information unknowingly.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://contact.ducati.com/us/en/lgf/b2c-configurator/light?family_s=DSX&model_s=DSXRALLY&cfgurl=https%3A%2F%2Fd ealers.configurator.ducati.com%2Fbikes%2Fus%2Fen%2Fdesertx%2Fdsxrally%2F3080 7787%3Fvid%3D62Y9BHO9A1&vid=62Y9BHO9A1

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ER2trIy9E3RMhlS02S0VQuYBKFzvKe7UcA

MWTyHeAB69CQ

**Violation 24: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

Screen readers do not announce required fields in the Contact Ducati form, leaving users

unaware of mandatory fields necessary for submission.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://contact.ducati.com/us/en/lgf/b2c-

configurator/light?family_s=DSX&model_s=DSXRALLY&cfgurl=https%3A%2F%2Fd

ealers.configurator.ducati.com%2Fbikes%2Fus%2Fen%2Fdesertx%2Fdsxrally%2F3080

7787%3Fvid%3D62Y9BHO9A1&vid=62Y9BHO9A1

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQpSai8pA3RDnfSeNJRlv6EBq7OMKm1W7

2fjRsRXvMAiMw

**Violation 25: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

Screen readers do not communicate whitespace characters in the email field or

missingcharacters in the phone number field, preventing users from correcting input

errors and submitting the form.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://contact.ducati.com/us/en/lgf/b2c-

configurator/light?family_s=DSX&model_s=DSXRALLY&cfgurl=https%3A%2F%2Fd

ealers.configurator.ducati.com%2Fbikes%2Fus%2Fen%2Fdesertx%2Fdsxrally%2F3080

7787%3Fvid%3D62Y9BHO9A1&vid=62Y9BHO9A1

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYCqJamKJX9Ps0M8ylK3isEBLVx5Fxev8Y

XNS7CQoWrEmg

30)     Although the Website appeared to have an "accessibility" statement displayed and an

"accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested,

still could not be effectively accessed by, and continued to be a barrier to, blind and visually

disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted

to access the statement, thus, was unable to receive any meaningful or prompt assistance through

the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively

navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling

excluded, as he is unable to participate in the same shopping experience, with the same access to

the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical

locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are

removed or remedied, to patronize one or more of Defendant's physical stores and to use the

Website, but he is presently unable to do so as he is unable to effectively communicate with

Defendant, due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)     Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and

advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in December and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated

herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)    There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)    Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals

with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

      i.     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and

equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.     Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.    Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)    WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.      A declaration that Defendant's website is in violation of the ADA;

b.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

---

[1] 

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.


**COUNT II – TRESPASS**

34

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)   Defendant's website contains software analytics.  Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)   Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)   The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)   Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)   Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80)   On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

**Cookie List**

A cookie is a small piece of data (text file) that a website – when visited by a user – asks your browser to store on your device in order to remember information about you, such as your language preference or login information. Those cookies are set by us and called first-party cookies. We also use third-party cookies – which are cookies from a domain different than the domain of the website you are visiting – for our advertising and marketing efforts.

**Strictly Necessary Cookies**

These cookies are necessary for the website to function and cannot be switched off in our systems. They are usually only set in response to actions made by you which amount to a request for services, such as setting your privacy preferences, logging in or filling in forms. You can set your browser to block or alert you about these cookies, but some parts of the site will not then work. These cookies do not store any personally identifiable information.

**Performance Cookies**

These cookies allow us to count visits and traffic sources so we can measure and improve the performance of our site. They help us to know which pages are the most and least popular and see how visitors move around the site. All information these cookies collect is aggregated and therefore anonymous. If you do not allow these cookies we will not know when you have visited our site, and will not be able to monitor its performance.

**Functional Cookies**

These cookies enable the website to provide enhanced functionality and personalisation. They may be set by us or by third party providers whose services we have added to our

pages. If you do not allow these cookies then some or all of these services may not function properly.

**Targeting Cookies**

These cookies may be set through our site by our advertising partners. They may be used by those companies to build a profile of your interests and show you relevant adverts on other sites. They do not store directly personal information, but are based on uniquely identifying your browser and internet device. If you do not allow these cookies, you will experience less targeted advertising.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.


WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.


                              Submitted by:

                              Mendez Law Offices, PLLC
                              Attorneys for Plaintiff
                              P.O. BOX 228630

Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434